# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| LASH BRUMFIELD, MARITZA BRUMFIELD, individuals and on behalf of TRIPLE D. CLEANING SERVICES, JBI MANAGEMENT,<br><br>Plaintiffs,<br><br>v.<br><br>ATLANTIC CITY HOUSING AUTHORITY, *et al.*,<br><br>Defendants. | Civil No. 21-cv-16061<br><br>**OPINION** |

**APPEARANCES**

CECILE D. PORTILLA, ATTORNEY AT LAW LLC
Cecile D. Portilla
7 Glenwood Avenue, Suite 400
East Orange, New Jersey 07017

ELDRIDGE HAWKINS LLC
Eldridge Hawkins
60 Evergreen Place, Suite 510
East Orange, New Jersey 07018

    *Attorneys for Plaintiffs*

COOPER LEVENSON, P.A.
Jennifer B. Barr
1125 Atlantic Avenue 3rd Floor
Atlantic City, New Jersey 08401

    *Attorney for Defendants*

**RENÉE MARIE BUMB, Chief United States District Judge:**

Plaintiffs Lash Brumfield, Maritza Brumfield, Triple D. Cleaning Services, LLC ("Triple D"), and JBI Management, LLC ("JBI") (collectively, "Plaintiffs") claim that they were disqualified from bidding on public contracts because of the Brumfields' race. Plaintiffs have sued the Atlantic City Housing Authority ("ACHA") and other affiliated individuals[1] under various state and federal laws. This matter now comes before the Court upon Defendants' motion for summary judgment [Docket No. 94] and Plaintiffs' purported cross-motion for summary judgment [Docket No. 99].[2] For the reasons set forth below, the Court **GRANTS** Defendants' motion with respect to Plaintiffs' federal law claims and analogous state law claims, and declines to exercise supplemental jurisdiction over the remaining state law claims. These state law claims will be remanded to the Superior Court of New Jersey, Law Division, Atlantic County.

## I.    FACTUAL BACKGROUND

Lash Brumfield is a member-manager of Triple D, a New Jersey cleaning and janitorial services company founded in July 2012. [Barr Decl. Ex. III at

---

[1]    "Defendants" in this action refers to the ACHA; ACHA Executive Director Thomas J. Hannon; Board of Commissioners members Mauro Sandoval, Jesse O. Kurtz, Patricia Tweedle, Nichole Gupton, Dr. La'Quetta Small, Stephanie Stewart, and Eli Gbayee; and ACHA employees Ivy Melendez (improperly pled as Ivy Mendez) and Nina Williams (formerly Nina Jennings).

[2]    Plaintiffs' purported cross-motion for summary judgment was raised within their Opposition Brief [Docket No. 99-7]. It was not timely or separately filed, and it is not designated as a pending motion before this Court. The Court need not entertain this application. L. R. Civ. P. 7.1(d)(7). Regardless, for all the reasons stated herein, the Court **DENIES** Plaintiffs' purported cross-motion for summary judgment.

ACHA 000291.]  Lash Brumfield and Maritza Brumfield are member-managers of JBI, a New Jersey landscaping company founded in January 2016.  [Barr Decl. Ex. MMM at ACHA 000304.][3]  From 2017 to 2019, the ACHA awarded contracts to Triple D and JBI to perform professional cleaning, landscaping, snow removal, and ice control services at ACHA-owned properties.  [Shample Decl. Exs. A, B, C.]  Such contracts are awarded through a competitive bidding process wherein invitations-to-bid are issued, companies submit bids, and the lowest responsible bidder is chosen for the contract.  [*See* Shample Decl. Ex. D.]

Starting in May 2018, the ACHA began to receive complaints about the quality of Triple D's cleaning services and JBI's landscaping, snow removal, and ice control services at various ACHA properties.  [Shample Decl. Exs. N–V.]  On February 20, 2019, after receiving complaints about Triple D's service at the Charles P. Jeffries Tower property ("Jeffries Tower"), Defendant Hannon, Executive Director of the ACHA, gave Triple D an official warning about its "substandard performance."[4]

---

[3]    "Barr Decl." refers to the Declaration of Jennifer B. Barr, Esquire in support of Motion for Summary Judgment and the exhibits thereto.  [Docket No. 94-3.] "Shample Decl." refers to the Declaration of Beth Ann Shample in support of Motion for Summary Judgment and the exhibits thereto.  [Docket No. 94-2.]

[4]    Originally, the ACHA had sent a notice of Termination of Contract for Triple D's Jeffries Tower cleaning contract on February 7, 2019, which Hannon rescinded on February 20 in favor of the warning because Triple D had received only two written complaints, not three as required under their contract.  [Shample Decl. Exs. AA, BB.]

[Shample Decl. Ex. BB.]  Even after this warning, the ACHA continued to receive complaints about Plaintiffs' performance.  [*See, e.g.*, Shample Decl. Exs. W, X, Y.]

Nevertheless, when the ACHA issued invitations-to-bid for cleaning services and snow removal contracts in June 2019, Triple D and JBI submitted bids for multiple worksites.  [Shample Decl. Exs. II, JJ.]  On July 2, 2019, the ACHA notified Triple D and JBI by letter (the "Disqualification Letters") that they were preliminarily disqualified from bidding for these contracts.  [Shample Decl. Ex. LL.]  The ACHA explained that the bids were "substantially deficient" as they did not comply with ACHA's Bid Specifications by failing to complete the Stockholder Disclosure Certification form, among other things.  [*Id.* at ACHA 002830.]  The ACHA considered these to be non-waivable deficiencies.  [*Id.*]  The ACHA also noted that it had determined that Plaintiffs "may not be qualified or responsible to provide services to the ACHA."  [*Id.*]  The letters informed Plaintiffs that they could request a hearing before the ACHA Board of Commissioners (the "Board") to discuss these concerns, as well as numerous others, including, "prior negative experience"[5] with Plaintiffs' services, lack of experience, and "moral integrity."  [*Id.* at ACHA 002830–31.]  In

---

[5]    Under New Jersey's public contracting regime, contracts shall be awarded to the "lowest responsible bidder."  N.J. Stat. § 40A:11-4a.  The governing body of the contracting unit may, however, disqualify a bidder "if the governing body finds that it has had prior negative experience with the bidder."  *Id.*  For there to be "prior negative experience," the bidder must be found to have failed to perform on a contract by court adjudication, mediation, or other alternative dispute resolution; or the bidder must have previously defaulted on a contract; or the bidder must be debarred or suspended from contracting at the time a contract is awarded.  *See* N.J. Stat. § 40A:11-4b(1)–(4).

4

advance of the hearing, the Board requested documentation listing "any and all members, principals, shareholders of" JBI and Triple D and copies of criminal background checks for "any and all employes, individuals, and/or contractors doing business on ACHA property on behalf of" JBI or Triple D. [*Id.* at ACHA 002831, ACHA 002833.]

This "responsibility hearing" took place during the next Board meeting on July 11, 2019. [July 11, 2019 Bd. Mtg. Tr., Shample Decl. Ex. NN.] At the hearing, the Board informed Lash and Maritza Brumfield that they had improperly failed to disclose that they were managing members of Triple D and/or JBI and that Lash Brumfield had an extensive prior criminal history.[6] [*Id.* 29:17-34:18, 38:21-49:4.] The Board also observed that the Brumfields had overstated their years of experience in cleaning services in order to qualify for the bids. [*Id.* 35:20-38:20.] At the conclusion of the hearing, the Board voted unanimously to disqualify Triple D and JBI from the bidding process. [*Id.* 101:2-104:22.]

Plaintiffs Lash and Maritza Brumfield are both African American. Plaintiffs assert that they were disqualified from bidding not because of the problems discussed at the hearing and proffered in the Disqualification Letters, but because of racial discrimination. In support, Plaintiffs have proffered an unsworn declaration by Diedre

---

[6]    Lash Brumfield has had several interactions with the criminal justice system, including various convictions relating to drug, firearm, and other offenses and multiple terms of incarceration. [*See* Barr Decl. Exs. O–HHH.]

Brock (the "Brock Declaration"),[7] an ACHA senior property manager, in which she stated that Defendant Hannon had said that Triple D was "getting too big" and solicited negative reviews of Plaintiffs' work so that they would lose their ACHA contracts. [Brock Decl. at ¶¶ 81–84, Eldridge Decl.[8] Ex. 43, Docket No. 99-15.] Brock also stated that Hannon took these actions so that the contracts would be awarded to his white associates. [*Id.* ¶ 100.] Brock could not recall any remarks by Hannon "that could be considered racist or offensive." [*Id.* ¶ 17.] According to Brock, Dave Darby, described only as Mr. Hannon's partner, used racial slurs "and nothing was done." [*Id.* ¶ 15.] Plaintiffs also claim that Action Janitorial, an allegedly white Hispanic-owned rival bidder, "was emailed to come take over cleaning contract in February,

---

[7]       The Court observes that this declaration was first procured during discovery and raised with the Court in June 2023. [Deal Ltr. Ex. A, Docket No. 86.] Defendants' counsel submitted the document for the Court's review along with a letter observing that the purported declaration was "not dated, does not identify who obtained the document, how the document was obtained, who submitted and/or asked Ms. Brock the 100 questions contained therein, or any other information regarding how the statement was conducted/obtained." [Deal Ltr. at 2.] Plaintiffs' counsel informed Mr. Deal that he was not present when the statement was given and that he was merely a recipient of the statement and had no information about how it was procured. [Deal Ltr. Ex. C.] The fact that counsel later affixed his signature to the document and retitled it "Counterstatement of Undisputed Material Facts" in no way remedies these patent deficiencies. [*See* Docket No. 99-2.]

       For these reasons and those set forth at length below, the Court finds that the Brock Declaration contains nothing more than speculative allegations and that it is insufficient to raise a genuine issue of material fact. It is an unsworn document not based on personal knowledge and solicited by Plaintiffs personally in an attempt to fabricate a genuine issue of fact. It hardly constitutes competent evidence of anything.

[8]       "Eldridge Decl." refers to the Second Supplemental Verification of Eldridge Hawkins, Esq. [Docket No. 99-5.]

without even putting the contracts for Bid for the Public" by Nina Jennings.  [Am. Compl. at 19 (errors in original), Docket No. 7; *see also* July 11, 2019 Bd. Mtg. Tr. 106:2-11.]

Plaintiffs filed this suit in New Jersey Superior Court on February 5, 2021, alleging violations of their civil rights under federal and state law.  [Compl., Docket No. 1-2.]  Defendants removed this matter to federal court on August 25, 2021. [Notice of Removal, Docket No. 1.]  After two years of litigation but limited discovery, Defendants filed their motion for summary judgment on August 25, 2023.  Plaintiffs opposed.  [Docket No. 99.]  The Court held oral argument on March 26, 2024, during which the Court outlined its questions and concerns regarding Plaintiffs' ability to survive summary judgment and directed Plaintiffs to submit a supplemental brief within thirty days with specific citations to record evidence to support their federal claims, which had been lacking from the original opposition papers.  [Docket No. 110.] After requesting and having been granted two extensions, Plaintiffs filed their supplemental brief on June 10, 2024.  [Docket No. 116.]  As the motion is now fully briefed and all parties have had an opportunity to be heard, the Court addresses the merits of the motion.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In determining whether a genuine dispute of material fact exists, "all evidence is viewed in the light most favorable to the non-moving party and 'all justifiable inferences are to be drawn in his favor.'" *Morgan v. Allison Crane & Rigging LLC*, 114 F.4th 214, 220 (3d Cir. 2024) (quoting *Anderson*, 477 U.S. at 255).  A "mere scintilla of evidence," however, does not generate a genuine dispute of material fact.  *Anderson*, 477 U.S. at 252.

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)).  The nonmovant's burden is rigorous.  The nonmovant "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment.  *Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995); *accord Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010) (citing *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment.")).

Furthermore, this Court may "disregard an affidavit 'entirely unsupported by the record and directly contrary to [other relevant] testimony,' or if it's 'clear' the affidavit was offered 'solely' to defeat summary judgment." *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 392 (3d Cir. 2017) (quoting *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253–54 (3d Cir. 2007)) (in-text citations omitted).

## III.    ANALYSIS

The Court has federal question jurisdiction over Plaintiffs' federal civil rights claims, and supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. §§ 1331, 1367. As the Court noted during oral argument, should Plaintiffs' federal law claims be dismissed, the Court intends to decline to exercise supplemental jurisdiction over the state law claims. *See Elkadrawy v. Vanguard Grp.*, 584 F.3d 169, 174 (3d Cir. 2009) ("A district court may decline to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction.'").

For this reason, the Court begins with Plaintiffs' federal law claims. The Sixth Count of Plaintiffs' Amended Complaint alleges that Defendants' conduct violates the First, Fourth, Fifth, and Fourteenth Amendments of the U.S. Constitution, and 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, and 1988. [Am. Compl. at 19.] In particular, Plaintiffs have asserted that:

> . . . Defendants each and all had a duty to prevent the unlawful actions of each other but instead agreed and conspired and aided and abetted each other in violating Plaintiffs' rights so that Defendant Hannon and his Hispanic, White (non-African American) chosen bidder would obtain the contract bids from ACHA to the detriment of Plaintiffs. Action Janitorial, White Owner, Owner was emailed to come take over cleaning contract in February, without even putting the contracts for Bid for the

9

Public.  Tom Hannon already had his preference, and Nina sent the email of the owner of Action Janitorial showing that she received a, email from Nina Jennings saying that Action Janitorial can possibly take over contract for Jeffries Tower.

[Am. Compl. at 19 ¶ 3 (errors in original).]  Pared to its essence, Plaintiffs' theory of unconstitutional conduct is that Defendants conspired to disqualify Plaintiffs from bidding on public contracts with the ACHA because of the Brumfields' race.  Plaintiffs contend that Defendants' basis for disqualification was merely pretext for racial discrimination.  In response, Defendants claim that Plaintiffs have not adduced any evidence whatsoever of impermissible racial discrimination.  To the contrary, they argue that Plaintiffs were disqualified, *inter alia*, because of poor performance and their failure to disclose disqualifying prior criminal convictions.  Defendants claim that Plaintiffs were statutorily disqualified from holding any governmental position or employment, including public contracts, due to these prior convictions, pursuant to a New Jersey Forfeiture Statute.  [Defs.' Br. at 5–14, Docket No. 94-4 (relying upon N.J. Stat. § 2C:51-1, *et seq.*).]

### A. Section 1981 Racial Discrimination Claim

The Court turns first to Plaintiffs' civil rights claim under 42 U.S.C. § 1981.  Section 1981 provides that "all persons . . . shall have the same right in every State and Territory to make and enforce contracts."  42 U.S.C. § 1981(a).  Making and enforcing contracts includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  *Id.* at § 1981(b).  This statute was enacted to further the

Thirteenth and Fourteenth Amendments' objectives of "abolish[ing] all the remaining badges and vestiges of the slavery system." *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (citing *Runyon v. McCrary*, 427 U.S. 160, 190 (Stevens, J., concurring)).

To prevail on a Section 1981 claim, a plaintiff must prove (1) that she is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned an activity enumerated under the statute, namely making and enforcing contracts. *See id.* at 797. An independent contractor may assert a Section 1981 claim for racial discrimination occurring within the scope of the contractor relationship. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181 (3d Cir. 2009). The elements of a Section 1981 claim are generally identical to those of an employment discrimination claim under Title VII. *Id.* at 181–82.

In a pretext suit such as this, racial discrimination claims under Section 1981 are analyzed under the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McClain v. Avis Rent A Car Systems, Inc.*, 648 F. App'x 218, 222 (3d Cir. 2016); *see also J. Kaz*, 581 F.3d at 181 (*McDonnell Douglas* burden-shifting framework applies to pretext claims by independent contractor under Section 1981).

Under this framework, a plaintiff must first establish a prima facie case of discrimination. *McClain*, 648 F. App'x at 222. If the plaintiff succeeds in doing so, then the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. The

defendant "satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). The defendant's burden at this step is "relatively light" because the plaintiff always maintains the ultimate burden of proving intentional discrimination. *Id.* (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253, 254, 256 (1981)).

If the defendant meets this burden, the burden shifts back to the plaintiff to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764.

### i. Plaintiffs Cannot Establish a Prima Facie Case of Racial Discrimination

The Court first examines whether Plaintiffs can establish a prima facie case. First, the parties do not dispute that the Brumfields are African American and thus members of a racial minority. Next, Plaintiffs must point to evidence from which a jury could infer that Defendants intended to discriminate against them based on their race. However, despite ample opportunity to do so, Plaintiffs have utterly failed to identify *any* competent evidence that even suggests that Defendants intended to racially discriminate against them in disqualifying them from the bidding process. Plaintiffs claim that the ACHA has been discriminating against "minority contractors

and small businesses forever under Tom Hannon's administration." [Pls.' Supp. Br. at 34.] Yet they adduce no *evidence* to support this allegation.

When pressed by the Court to provide record evidence from which a jury could possibly infer racial discrimination, Plaintiffs rely almost exclusively on the Brock Declaration, a document first emailed to defense counsel by Plaintiffs' counsel as part of an amended discovery response. [*See, e.g.*, Oral Arg. Tr. 7:1-9:5, 9:14-12:3, Docket No. 115; Deal Ltr. Ex. A.] The Brock Declaration raises no genuine issue of material fact. It is unsworn, undated, self-serving, and not based on personal knowledge. It is merely a series of third-hand, vague, and conclusory unsubstantiated assertions given in response to questions asked by Plaintiff Lash Brumfield himself. [*See generally* Brock Decl.; *see also* Oral Arg. Tr. 7:6-9:24; Defs.' Reply Br. at 9–11, Docket No. 103.] Brock's testimony was not taken in discovery but was instead solicited by Plaintiff Lash Brumfield personally in an attempt to bolster the case. [Oral Arg. Tr. at 7:7-10, 9:20-24.] Finally, it was "verified" by the witness herself, rather than by a court, notary public, or other official. [Brock Decl. at 1.] This document has no evidentiary value. Plaintiffs' attempt to use it to concoct a genuine dispute of material fact fails. *See Kirleis v. Dickie, McCamey & Chilocte, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (a "conclusory" and "self-serving" affidavit is insufficient to withstand a motion for summary judgment); *see also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").[9]

Putting aside these myriad issues, Brock's statements, even taken as true, do not support an inference of racial discrimination. For example, her statement that Defendant Hannon's partner, Dave Darby, used racial slurs is also not sufficient evidence of Defendants' bias to defeat summary judgment. [Brock Decl. ¶ 15.] There is no information about the relationship between Mr. Darby and the ACHA, including whether the ACHA had any disciplinary or other authority over him, or even the relationship between Mr. Darby and Defendant Hannon. [Brock Decl. ¶ 15; Defs.' Reply Br. at 10.] Additionally, there is no evidence whatsoever from which to infer that Hannon's alleged comment that Triple D and JBI were getting "too big too fast" had any racial undertones or is in any way related to race-based discrimination. [Brock

---

[9]    Plaintiffs' attempt to manufacture a question of fact by having Plaintiff Lash Brumfield sign and verify the Amended Complaint two years after it was filed fares no better. [Docket No. 99-6; *see also* Oral Arg. Tr. 22:1-24:11.] The Court has already warned Plaintiffs that this tactic is inappropriate and insufficient to defeat summary judgment. [Oral Arg. Tr. 23:15-26:9.] Generally, a verified complaint may be treated as an affidavit in opposition for summary judgment. *Porter v. Pennsylvania Dep't of Corr.*, 974 F.3d 431, 443 (3d Cir. 2020) ("We consider as affidavits [Plaintiff's] sworn verified complaints, to the extent that they are based upon personal knowledge and set out facts that would be admissible in evidence."). Critically, however, "if it is clear that an affidavit is offered solely for the purpose of defeating summary judgment, it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight and that summary judgment is appropriate." *Jiminez*, 503 F.3d at 253. Plaintiffs' non-verified Amended Complaint was filed in September 2021. Two years later, Lash Brumfield verified that same complaint in opposition to the instant motion for summary judgment. The Court cannot think of a clearer example of an affidavit submitted solely for the purpose of defeating summary judgment. It is insufficient to raise a genuine issue for trial.

14

Decl. ¶ 81.]  The Brock Declaration instead simply states that "[Hannon] wanted to put an end to slow the tempo down or get rid of it all together."  [*Id.* ¶ 82.]

Similarly, there is nothing in the Brock Declaration or anywhere else in the record that supports Plaintiffs' accusation that Hannon claimed JBI and Triple D "needed to be contained" because they were businesses owned by African Americans. [*See* Pls.' Opp'n Br. at 18, Docket No. 99-7; *contra* Brock Decl. *generally*.]  Nowhere does Brock describe Hannon as racist; to the contrary, she specifically states she "cannot recall" any racist remarks by Hannon, and instead paints him as broadly difficult to work with.[10]  [Brock Decl. ¶¶ 12–18.]

Critically, there is no *evidence* connecting any racial animus claimed in the Brock Declaration to the decision to disqualify the Brumfields and their companies from the contract bidding process.  Rather, there are *allegations* of general racial animus on the part of parties unconnected to Defendants, and *allegations* that a white Hispanic-owned entity was Hannon's preference to receive the contract.  [*See* Brock Decl. ¶¶ 3, 99, 100; Pls.' Supp. Br. at 31–34.]  At no point do these allegations, even if they are credited, sufficiently connect Defendants' supposed animus to the denial of the bid.  Instead, the facts are clear that Plaintiffs were excluded from bidding because of complaints about Triple D's services, the non-waivable deficiencies in their bid submissions, including the failure to disclose Lash Brumfield's disqualifying criminal convictions,

---

[10]    Adjectives used include "[a]ssertive, emotional, narcissist [sic], abrasive, and moody" and "rude and nasty toward staff," but not racist.  [Brock Decl. ¶¶ 13, 14.]

the Brumfields' status as member-managers of Triple D and JBI, and their relative inexperience in providing cleaning services. [*See* July 11, 2019 Bd. Mtg. Tr. 40:3-21, 44:16-46:12, 101:9-104:10; Defs.' Br. at 32, 43–44.]

Plaintiffs have proffered no evidence from which a jury could determine that they have established a prima facie case of racial discrimination under Section 1981.

### ii. Defendants Proffered Legitimate Non-Discriminatory Reasons for Plaintiffs' Disqualification

Even if Plaintiffs could establish a prima facie case – which, to be clear, they cannot – Defendants have proffered legitimate non-discriminatory reasons for disqualifying Plaintiffs from the bidding process. As a threshold matter, according to Defendants, the criminal convictions of Lash Brumfield and other individuals associated with Triple D made the entities ineligible to hold public contracts under both the express terms of the invitations-to-bid and the New Jersey Forfeiture Statute.

The Forfeiture Statute provides, in relevant part, that:

[a] person holding any public office, position, or employment, elective or appointive under the government of this State or any agency or political subdivision thereof, who is convicted of an offense shall forfeit such office, position or employment if:

(1) He is convicted under the laws of this State of an offense involving dishonesty or of a crime of the third degree or above or under the laws of another state of the United States of an offense or a crime which, if committed in this State, would be such an offense or crime.

N.J.S.A. 2C:51-2(a)(1). Additionally, the invitations-to-bid set forth that ACHA "WILL NOT accept anyone convicted of any offense involving dishonesty or a crime of the third degree." [*See, e.g.*, Shample Decl. Ex. C.]

Lash Brumfield has multiple third-degree felony drug-related and firearm convictions. [*See, e.g.,* Barr Decl. Exs. Q, T, U, V, QQ.] He was also convicted of a crime of dishonesty in December 2017 after falsifying motor vehicle insurance cards, while Triple D had existing contracts with the ACHA. [Barr Decl. Ex. GGG.] Harith Nellom and Rashaun Brumfield, members of Triple D, also have second- and third-degree drug-related convictions, respectively. [Barr Decl. Exs. G, L.] The Board set forth these concerns on the record during the responsibility hearing. [*See, e.g.,* July 11, 2019 Bd. Mtg. Tr. 43:7-46:11.] This is sufficient to articulate a legitimate non-discriminatory reason for Plaintiffs' disqualification.

What's more, Plaintiffs' bid submissions also contained several material non-waivable defects. Plaintiffs failed to disclose the disqualifying criminal records of Lash Brumfield and other individuals affiliated with his companies. [*Id.* 29:17-34:18, 38:21-49:4.] Plaintiffs also misrepresented their years of relevant work experience and did not disclose all LLC members as required.[11] [*Id.* 35:20-38:20.]

Even assuming Plaintiffs could establish a prima facie case—which, again, they clearly cannot—the Court finds that Defendants have articulated legitimate, non-discriminatory reasons for their actions.

---

[11] Plaintiffs' argument that they were not required to disclose all LLC members because the form only requested information about stockholders does not hold water. [*See* Pls.' Opp'n at 12–13.] As Defendants note, the statute governing stockholder disclosure in public contracting requires that entities who do not have "stockholders" disclose those individuals who serve as "members," as in an LLC. [Defs.' Br. at 18 (citing N.J. Stat. § 52:25-24.2).]

17

### iii.  Plaintiffs Cannot Establish that Defendants' Proffered Reasons Are Mere Pretext

The burden now shifts back to Plaintiffs to "point to some evidence, direct or circumstantial, from which a factfinder could reasonably" find that the proffered reason is merely pretext for racial discrimination.  *See Fuentes*, 32 F.3d at 764.  Plaintiffs have failed to do so.  Instead, they offer only allegations and argument.  The Court has already found this is insufficient to defeat summary judgment.  As the Court has explained, the ACHA's bases for disqualification were numerous, legitimate, and grounded in the law.  There are no inconsistencies in the record as to these reasons. The fact that one of the contracts was awarded to Action Janitorial after Plaintiffs were disqualified, without more, does not suggest racial discrimination or pretext.  There is no evidence in the record that Action Janitorial was awarded the contract *because* it is a "Hispanic, White (non-African American)" owned company, as Plaintiffs allege. There is also no evidence that any individuals associated with Action Janitorial had disqualifying criminal histories that were overlooked, or that Action Janitorial's bid submissions were deficient.  Any argument to the contrary is purely speculative.

It should be noted that the Court has gone above and beyond to ensure that Plaintiffs have had ample opportunity to make their case.  After reviewing the summary judgment briefs, the Court held oral argument during which it advised Plaintiffs of its concerns and afforded them the chance to submit supplemental briefing to adduce facts to support all elements of their claims and address the Court's questions.  Yet they failed to do so.  [*See generally* Oral Arg. Tr.; Pls.' Supp. Br. at 31–33

(relying on the Brock Declaration and unsubstantiated allegations relating to Action Janitorial for factual support of Section 1981 claim, in absence of any facts showing that Action Janitorial was similarly situated to Plaintiffs with respect to convictions of members and misrepresentation of years of experience).]

As this Court has explained to Plaintiffs multiple times, without record evidence from which a jury could reasonably infer that racial discrimination was the cause of their disqualification, Plaintiffs cannot succeed on their Section 1981 claim. Their subjective belief alone that they have suffered racial discrimination is insufficient. *See Groeber v. Friedman & Schuman, P.C.*, 555 F. App'x 133, 135 (3d Cir. 2014) (plaintiff's subjective belief that race played a role is insufficient to establish inference of discrimination; without proof that someone similarly situated outside of protected class was treated more favorably, a record only of subjective belief will not support a discrimination claim).

Plaintiffs have failed to establish a prima facie case of racial discrimination under Section 1981. Even if they had, Plaintiffs have not identified any "evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve [Defendants'] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause" of Plaintiffs' disqualification from the bidding process. *Fuentes*, 32 F.3d at 764. There

are no genuine disputes of material fact as to this claim. The Court therefore **GRANTS** summary judgment in favor of Defendants on the Section 1981 claim.[12]

### B. Section 1982 Deprivation of Property Right Claim

Plaintiffs claim that they were deprived of a property right when they were disqualified from bidding for a public contract. [*See* Pls.' Supp. Br. at 35.] Section 1982 of the Civil Rights Act provides that all citizens "shall have the same right . . . to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. This statute also seeks to effectuate the aims of the Thirteenth and Fourteenth Amendments of the Constitution and generally "prohibits racial discrimination in transactions relating to real and personal property." *Brown*, 250 F.3d at 797. To prevail on their Section 1982 claim, Plaintiffs must prove (1) Defendants' racial animus, (2) intentional discrimination, and (3) that Defendants deprived Plaintiffs of a property right under the statute because of race. *Id.*; *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 616 (1987).

As with their Section 1981 claim, Plaintiffs have failed to identify any competent evidence from which a jury could infer that Defendants intentionally

---

[12]    Racial discrimination claims under the New Jersey Law Against Discrimination ("NJLAD") are also analyzed under the *McDonnell Douglas* framework. *Chapman v. Am. Inst. of Certified Pub. Accts.*, 233 F. App'x 141, 143 (3d Cir. 2007). As a result, the analysis set forth above applies with equal force to Plaintiffs' NJLAD claim. Therefore, as Plaintiffs have failed to set forth any evidence from which a jury could infer racial discrimination, Plaintiffs' NJLAD claim must be dismissed. Summary judgment is **GRANTED** in favor of Defendants on the First Count of the Amended Complaint.

discriminated against them based on their race in the decision to disqualify them from the bidding process.  Without this, Plaintiffs cannot support their Section 1982 claim, and the claim must be dismissed.  *See Brown*, 250 F.3d at 797 ("intent to discriminate on the basis of race" is an element of the claim).

Plaintiffs' Section 1982 claim fails for the additional reason that they have not established that Defendants deprived them of a property right under the statute. Section 1982 protects only "property" rights.  *Shaare Tefila*, 481 U.S. at 616.  Property rights "extend well beyond actual ownership of real estate, chattels, or money," but they are not all-encompassing.  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570, 572 (1972); *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).  Rather, "[t]he hallmark of property . . . is an individual entitlement grounded in state law." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (citations omitted).  Importantly, the Constitution does not *create* property rights, but rather protects interests in property that are "defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Roth*, 408 U.S. at 577.

"Once that characteristic is found, the types of interests protected as 'property' are varied and, as often as not, intangible, relating 'to the whole domain of social and economic fact.'"  *Logan*, 455 U.S. at 430 (quoting *Nat'l Mut. Ins. Co. v. Tidewater Transfer Co.*, 337 U.S. 582, 646 (1949) (Frankfurter, J., dissenting)).  To have a property interest in a benefit like a contract, a person must have "more than an abstract need or

desire for it" or a "unilateral expectation of it." *Roth*, 408 U.S. at 577. "He must, instead, have a legitimate claim of entitlement to it." *Id.*

Defendants argue that Plaintiffs' Section 1982 claim must be dismissed because Plaintiffs do not even allege that Defendants have deprived them of a protected property interest under the statute. [Defs.' Br. at 44 (citing *Brown*, 250 F.3d at 797).] The Court agrees. Plaintiffs have provided no state law or other support for their position that Defendants' conduct interfered with a protected property right.

"[T]he right to earn a livelihood is a property right" recognized by the United States and New Jersey Constitutions. *Carroll v. Local No. 269, IBEW*, 31 A.2d 223, 224–25 (N.J. Ch. 1943); *cf. Peper v. Princeton Univ. Bd. of Trs.*, 389 A.2d 465, 476 (N.J. 1978). But this does not create a property interest in "any one particular job." *Gipson v. Supermarkets Gen. Corp.*, 564 F. Supp. 50, 56 (D.N.J. 1983). Furthermore, "the possibility of a future contract with a municipality is not a property interest that warrants procedural due process protection." *D & D Assocs., Inc. v. Bd. of Ed. of North Plainfield*, No. 03-1026 (MLC), 2012 WL 1079583, at *16 (D.N.J. Mar. 30, 2012) (quoting *Mun. Revenue Servs., Inc. v. McBlain*, 347 F. App'x 817, 826 (3d Cir. 2009)); *see also Indep. Enter., Inc. v. Pittsburgh Water & Sewer Auth., Inc.*, 103 F.3d 1165, 1178 (3d Cir. 1997) ("[O]ne who bids on a public contract has no legitimate expectation of receiving it until the contract is actually awarded."). Here, it is undisputed that

22

Plaintiffs were bidding on new ACHA contracts.[13]  [*See* Shample Decl. Exs. II, JJ.] Their attempt to frame a "right to bid" as a protected property interest is patently unsupported by law.

Plaintiffs do not have a freestanding property interest in a potential municipal contract generally, let alone one that is awarded in a competitive bidding process governed by rules that Plaintiffs have not followed.  Simply put, Plaintiffs do not have an unqualified right to bid on public contracts.  Indeed, in New Jersey, the government enjoys broad power to determine who is qualified to bid for public contracts, and the "bidder's 'rights' remain subordinate to the primary interest of the State as a consumer" to limit eligibility to qualified bidders based on statutory criteria.  *Trap Rock Indus., Inc. v. Kohl*, 284 A.2d 161, 166–68 (N.J. 1971); *see also State v. Timoldi*, 649 A.2d 872, 874 (N.J. Sup. Ct. App. Div. 1994) ("There is no absolute property right in a government job.").   Accordingly, Plaintiffs have failed to establish that their disqualification implicated a property right protected by Section 1982.

Plaintiffs' allegations do not set forth a protected property interest under Section 1982. And Plaintiffs do not raise a genuine dispute of material fact as to whether Defendants intentionally discriminated against them.  For these reasons, the

---

[13]    To the extent Plaintiffs argue that the notice of termination of the Jeffries Tower contract, sent on February 7, 2019 and retracted on February 20, 2019 [Shample Decl. Exs. AA, BB.], constitutes a deprivation of a property interest, this argument fails.  The contract was reinstated before the termination ever went into effect.  [Shample Decl. Ex. AA (noting that "contract termination will take effect 30 days from today" and that "March 9, 2019 will be the last service date").]  Plaintiffs cannot in good faith argue a deprivation of a property interest in this context.

Court **GRANTS** summary judgment in favor of Defendants on Plaintiffs' Section 1982 claim.[14]

### C. Section 1983 Under Color of Law Claim

Plaintiffs also claim that Defendants violated Section 1983 of the Civil Rights Act by depriving them of rights secured by federal law while acting under the color of law. [Am. Compl. at 19.] Section 1983 provides that "[e]very person who, under color of any [law] . . . , subjects, or causes to be subjected, any [person] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983. However, Section 1983 does not in itself confer any rights; to prevail on a Section 1983 claim, a plaintiff must ground that claim in a right conferred by the Constitution or the laws of the United States. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Fagan v. City of Vineland*, 22 F.3d 1296, 1310 (3d Cir. 1994).

Though Plaintiffs invoke the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution in the Sixth Count of their Amended Complaint, they do not specify which substantive or procedural rights under these amendments were violated. At oral argument, the Court expressed this concern and specifically

---

[14] The Fourth Count of the Amended Complaint alleges that Plaintiffs were deprived of a property interest in violation of the New Jersey Constitution. For the reasons the Section 1982 claim fails, so too does this claim. Summary judgment is **GRANTED** in favor of Defendants on the Fourth Count of the Amended Complaint.

afforded Plaintiffs an opportunity to further explain and support their Section 1983 claim, particularly whether it is rooted in alleged substantive or procedural due process violations. [Oral Arg. Tr. at 29:23-31:2.]

Yet Plaintiffs chose not to do so. [*See* Pls.' Supp. Br. at 36–37.] In fact, the section opposing dismissal of the Section 1983 claim in the supplemental brief is copied verbatim from Plaintiffs' original opposition brief. [*Compare* Pls.' Opp'n at 36–37 *with* Pls.' Supp. Br. at 36–37.] It clarifies nothing and cites no record evidence. Instead, Plaintiffs once again argue that they were denied "equal footing and the ability to bid on an equal basis with other bidders due to race" and were thus denied "equal protection as guaranteed under State and Federal Laws." [Pls.' Supp. Br. at 36–37.] This *argument* alone is insufficient to establish a Section 1983 claim. The Court has already found that Plaintiffs cannot establish their remaining federal law claims. Without an underlying violation upon which to ground the Section 1983 claim, the claim must fail. *See Graham*, 490 U.S. at 393–94; *Park v. Tsiavos*, 679 F. App'x 120, 125 (3d Cir. 2017) (affirming district court's dismissal of Section 1983 claim where underlying constitutional violations not established). Therefore, this Court **GRANTS** summary judgment in favor of Defendants on the Section 1983 claim.[15]

---

[15]    "This district has repeatedly interpreted [the New Jersey Civil Rights Act] analogously to § 1983." *Shields v. Penns Grove-Carneys Point Reg'l Sch. Dist.*, No. CV 14-2106 (RMB/JS), 2016 WL 818815, at *4 (D.N.J. Mar. 1, 2016) (citing *Pettit v. New Jersey*, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011) (collecting cases); *Borden v. Sch. Dist. of Twp. of E. Brunswick*, 523 F.3d 153, n. 5 (3d Cir. 2008)). For the reasons set forth above, the Court **GRANTS** summary judgment in favor of Defendants on the Fifth Count of the Amended Complaint under the New Jersey Civil Rights Act.

### D. Conspiracy Claims under Sections 1985 and 1986

Section 1985 of the Civil Rights Act is a conspiracy statute.  42 U.S.C. § 1985(3).

Like Section 1983, Section 1985(3) "provides no substantive rights itself; it merely

provides a remedy for violation of the rights it designates."  *Great Am. Fed. Sav. & Loan*

*Ass'n v. Novotny*, 442 U.S. 366, 372 (1979).  To prove that defendants engaged in a

conspiracy in violation of Section 1985, a plaintiff must establish (1) a conspiracy

involving two or more persons; (2) one or more of the conspirators performed or

caused to be performed an overt act in furtherance of the conspiracy; and (3) that the

overt act injured the plaintiff in their person or property, or deprived the plaintiff of

any right or privilege of a citizen of the United States.  *Barnes Found. v. Twp. of Lower*

*Merion*, 242 F.3d 151, 162 (3d Cir. 2001) (citing *Griffin v. Breckenridge*, 403 U.S. 88,

102–03 (1971)).  Furthermore, the plaintiff must prove that the conspiracy was

motivated by animus against a protected class.  *United Bhd. of Carpenters & Joiners of*

*Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 836 (1983); *Brown*, 250 F.3d at 805.

Section 1985(3) provides for causes of action against both state and private actors.

*Novotny*, 442 U.S. at 371–72; *Barnes*, 42 F.3d at 162.

As this Court has already found, there is no evidence in the record from which

a jury could infer any racial or other discriminatory animus.  For this reason alone,

Plaintiffs' conspiracy claim fails.  *Bray v. Alexandria Women's Health Clinic*, 506 U.S.

263, 267–68 (1993); *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006).

Furthermore, Defendants argue that the intra-corporate conspiracy doctrine bars Plaintiffs' Section 1985 claim. [Defs.' Br. at 47.] The intra-corporate conspiracy doctrine provides that "an entity cannot conspire with one who acts as its agent." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313–14 (3d Cir. 2003). The doctrine applies with equal force to governmental entities. *See, e.g.*, *Heffernan v. Hunter*, 189 F.3d 405, 412 n.5 (3d Cir. 1999) (intra-corporate conspiracy doctrine "has also been carried over to alleged conspiracies involving governmental entities"); *Suber v. Guinta*, 902 F. Supp. 2d 591, 608 (E.D. Pa. 2012) ("a municipality and its officials are considered a single entity which cannot conspire with itself.").

This doctrine bars claims premised upon a defendant's actions made in an "official capacity." *Gen. Refractories*, 337 F.3d at 313. Each Defendant was an agent and/or employee of the ACHA and, as such, argue Defendants, Plaintiffs cannot establish that they conspired with each other to violate Plaintiffs' rights. [Defs.' Br. at 47.] Plaintiffs respond that an exception should apply because Defendant Hannon "had an independent personal stake in manipulating government monies for himself and helping his friends, peers and associate [sic] get the contracts on which [P]laintiffs were offering bids." [Pls.' Supp. Br. at 38.] This is all that Plaintiffs state in defense of their Section 1985(3) claim, citing without explanation paragraph 100 of the Brock Declaration and a document that appears to be one of the Plaintiffs' personal notes about a meeting. [*Id.* (citing Eldridge Decl. Ex. 1 at Pa00156, Docket No. 99-9); Pls.' Opp'n at 38 (citing Brock Decl. ¶ 100).]

27

Paragraph 100 of the Brock Declaration reads:

> I make this statement voluntarily to Lash Brumfield in the interests of justice to hopefully correct what was done to hurt Lash Brumfield, and his people.  NOT because they had criminal records, because that was not a real issue with them or anyone else, but because they dared to take contracts from Tom Hannon's designated recipients (who happened to be, for the most part WHITE).

[Brock Decl. ¶ 100 (errors in original).]  As this Court has already found, the Brock Declaration is insufficient to defeat summary judgment.  Even if credited as admissible evidence, which it should not be for the reasons outlined above, Brock's statement does not support Plaintiffs' accusation that Defendant Hannon was essentially engaging in corruption.  The Court will not entertain such baseless accusations.  There is likewise nothing in the Brock Declaration that suggests racial discrimination on the part of any Defendant.

The second document Plaintiffs rely upon appears to be typed personal notes regarding a meeting with Defendant Hannon.  [Eldridge Decl. Ex. 1 at Pa00156.]  It is unclear who prepared these notes, whether they were prepared contemporaneously with the meeting they purport to describe, or why they were prepared.  The document contains purely vague and conclusory accusations and is neither signed nor sworn.  Like the Brock Declaration, it has no evidentiary value and does not raise an issue of material fact for trial.  *See Kirleis*, 560 F.3d at 161 (observing that a "conclusory" and "self-serving" affidavit is insufficient to withstand a motion for summary judgment); *Abramowitz v. Tropicana Atlantic City Corp.*, Civ. No. 15-1694 (JS), 2017 WL 1041162, at *8 (D.N.J. Mar. 17, 2017), *aff'd* 750 F. App'x 108 (3d Cir. 2018) (holding that

28

affidavit qualified with "to the best of my knowledge and belief," and containing "an inordinate number of legal arguments and unqualified opinions" could not be considered as record evidence) (internal quotation marks omitted)); *Young v. United States*, 152 F. Supp. 3d 337, 351 n.10 (D.N.J. 2015) ("[T]his 'Affidavit' is wholly defective.  It argues both law and fact in direct contravention of L. Civ. R. 7.2(a). Further, it contains neither a jurat nor a statement in the form prescribed by 28 U.S.C. § 1746, rendering the document unsworn and not under the penalty of perjury.  Thus it fails to be an 'affidavit' by the plain meaning of the word.").

Neither record citation is competent evidence of anything, let alone a conspiracy under Section 1985(3), and Plaintiffs offer no other evidence to support their claim.  The Court finds that Plaintiffs have not proffered any evidence to support an exception to the intra-corporate conspiracy doctrine.  This doctrine bars Plaintiffs' conspiracy claim under Section 1985.  And because Plaintiffs cannot establish a claim under Section 1985, their Section 1986 claim likewise fails.[16]  The Court therefore

---

[16]    Section 1986 creates an action for "neglect to prevent" and provides that:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 . . . , are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case.

**GRANTS** summary judgment in favor of Defendants on the Section 1985 and Section 1986 claims.

### E.  Request for Attorney's Fees under Section 1988

Section 1988 permits a court to award reasonable attorney's fees to the prevailing party in an action to enforce Sections 1981, 1982, 1983, 1985, and 1986, among other civil rights laws.  42 U.S.C. § 1988(b).  It does not give rise to an independent cause of action, but rather is "intended to complement the various acts which do create federal causes of action for the violation of federal civil rights."  *Moor v. Alameda Cnty.*, 411 U.S. 693, 701–02 (1973); *see also Schroder v. Volcker*, 864 F.2d 97, 99 (10th Cir. 1988) ("[S]ection 1988 does not create independent causes of action[;] it simply 'defines procedures under which remedies may be sought in civil rights actions.'").  It is only applicable where a party "essentially succeeds in obtaining the relief he seeks in his claims on the merits."  *Morrison v. Ayoob*, 627 F.2d 669, 671 (3d Cir. 1980).

Defendants argue that "there is no need to provide relief under § 1988."  [Defs.' Br. at 48.]  The Court agrees and, in fact, is deeply troubled by Plaintiffs' conduct in the pursuit of these claims, which claims this Court has found to be without any merit.  Plaintiffs have not prevailed against Defendants on any of their federal civil rights claims.  As a result, the Court will not award any attorney's fees under Section 1988.

---

42 U.S.C. § 1986.  Because Plaintiffs have failed to show that there is a genuine issue of material fact as to whether a conspiracy existed under Section 1985, their Section 1986 claim is also wholly unsupported by evidence and cannot succeed.

### F.  Remaining State Law Claims

Having granted summary judgment in favor of Defendants on each of Plaintiffs' federal law claims, and with this Court's subject matter jurisdiction premised on federal question jurisdiction, the Court must determine whether it will exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if— . . . the district court has dismissed all claims over which it has original jurisdiction."); *Kalick v. Nw. Airlines Corp.*, 372 F. App'x 317, 322 (3d Cir. 2010).

"Absent extraordinary circumstances, 'jurisdiction [over state law claims] should be declined where the federal claims are no longer viable.'"  *Kalick*, 372 F. App'x at 322 (quoting *Shaffer v. Bd. of Sch. Dirs. Of Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984)); *see also Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 157 (3d Cir. 1998) ("district courts [have] the discretion to refuse to exercise supplemental jurisdiction when 'values of judicial economy, convenience, fairness, and comity' counsel that the district court remand state claims to a state forum.") (citations omitted).  Because no extraordinary circumstances are evident here, this Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, namely the Second and Third Counts of the Amended Complaint.[17]  *See Kalick*, 372 F. App'x at 322; *Jordan v. Staffing Plus, Inc.*,

---

[17]    Count Two alleges a breach of contract and breach of the implied covenant of good faith and fair dealing.  Count Three alleges intentional interference with

315 F. Supp. 3d 844, 848 (E.D. Pa. 2018) (declining to exercise supplemental jurisdiction over state law claims after dismissing plaintiff's Section 1981 claim).

As the state court is adequately positioned to resolve all aspects of Plaintiffs' remaining claims, the Court finds that remand of those claims is appropriate. *See Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 283 (3d Cir. 2010). This matter was removed to this Court from the Superior Court of New Jersey, Law Division, Atlantic County. Accordingly, the remaining state law claims will be remanded to the state court.

## IV.    CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiffs' federal law claims (Sixth Count), as well as the analogous claims under New Jersey state law (First, Fourth, and Fifth Counts). The Court declines to exercise supplemental jurisdiction over the remaining state law claims (Second and Third Counts). These claims will be remanded to the Superior Court of New Jersey, Law Division, Atlantic County. An appropriate Order will issue on this date.

**s/Renée Marie Bumb**
RENÉE MARIE BUMB
Chief United States District Judge

DATED: January 17, 2025

---

beneficial economic position. These remaining state law claims require an in-depth analysis of applicable New Jersey law.